**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

_____
                                                                    )   Chapter 11
In re:                                                             )
                                                                    )   Case No.: 16-10287 (CSS)
HORSEHEAD HOLDING CORP., et al.,[1]   )
                                                                    )   Joint Administration Requested
                      Debtors.                                )
_____ )   **Ref. Docket No.: 17**

**MACQUARIE BANK LIMITED'S OBJECTION TO THE DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS TO (I) OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364, (II) AUTHORIZING THE POSTPETITION USE OF CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B), AND (V) <u>GRANTING RELATED RELIEF</u>**

Macquarie Bank Limited ("<u>Macquarie</u>"), for itself and as agent for related entities, by and through its undersigned counsel, hereby submits this (a) limited objection (the "<u>Objection</u>") to the *Debtors' Motion for Interim and Final Orders (i) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105, 362, 363 and 364, (ii) Authorizing the Postpetition Use of Cash Collateral, (iii) Granting Adequate Protection to the Prepetition Secured Parties, (iv) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(B) and, (v) Granting Related Relief* [Docket No. 17] (the "<u>DIP Motion</u>").  In support of this Objection, Macquarie respectfully represents as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Horsehead Holding Corp. (7377); Horsehead Corporation (7346); Horsehead Metal Products, LLC (6504); The International Metals Reclamation Company, LLC (8892); and Zochem Inc. (4475).  The Debtors' principal offices are located at 4955 Steubenville Pike, Suite 405, Pittsburgh, Pennsylvania 15205.

01:18230022.4

1

**Preliminary Statement**

1.  As the Debtors' senior secured lender holding claims in excess of $32 million secured by a perfected security interest in substantially all of the Debtors' assets (excluding Zochem, Inc.), Macquarie is entitled to adequate protection to preserve its secured position and protect it against the declining value of its collateral in these chapter 11 cases. While the DIP Motion pays lip service to Macquarie's right to adequate protection under the Bankruptcy Code, the adequate protection package offered to Macquarie under the proposed DIP Facility[2] is manifestly inadequate to protect Macquarie's interests. In particular, the Debtors propose to provide Macquarie "adequate protection" in the form of replacement liens in the Debtors' assets and an allowed superpriority administrative claim (subject to a carve-out in the DIP Facility) that actually diminishes Macquarie's security. Indeed, the protection offered to Macquarie is illusory because the terms of the Proposed DIP Facility permit Debtors to utilize the net proceeds from the sale or disposition of Collateral to pay obligations under the DIP Facility prior to the payment of obligations senior to the DIP Facility—such as Macquarie's secured interests. The result: a de facto non-consensual priming of Macquarie's senior security interests.

2.  Moreover, Debtors' offer of adequate protection fails to provide for the payment of the interest, fees and expenses to which Macquarie is entitled under the Bankruptcy Code and the Macquarie Credit Agreement (as defined below).

3.  Inexplicably, not only does the adequate protection offered fail to protect Macquarie's interests, but the adequate protection proposed to Macquarie is not even on par with what is being provided to lenders junior to Macquarie. For example, Debtors provide junior secured lenders, among other things, releases, a section 506(c) waiver, and the payment of their

---

[2] All Capitalized terms not defined herein shall have the same meaning as ascribed to them in the DIP Motion.

legal fees and expenses, while Macquarie's adequate assurance package contains none of these protections. Such disparate treatment is unsupportable and inequitable.

4.   Macquarie has attempted to work in good faith with the Debtors and the DIP lenders to reach consensus on a reasonable adequate protection package. Unfortunately, its efforts have been in vain.

5.   Accordingly, and for the reasons set forth more fully below, Macquarie objects to entry of the Interim or Final Orders unless the Debtors provide Macquarie with adequate protection customarily provided a senior secured lender in its position, which in this case, is at the very least consistent with Macquarie's rights pursuant to the various agreements to which it is a party, and commensurate with the treatment of other creditors.

**Procedure Posture**

6.   On February 2, 2016, (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

7.   On the Petition Date, the Debtors filed a number of "first-day" motions, including the DIP Motion. The Debtors also filed, contemporaneously therewith, the *Declaration of James M. Hensler in Support of the First Day Motions* [Docket No. 16] (the "Hensler First Day Decl."). Pursuant to the DIP Motion, the Debtors are seeking approval for postpetition credit facility, in the aggregate amount of $90 million, and for authorization to use cash collateral.[3]

---

[3] In support of the relief requested in the DIP Motion, attached thereto as Exhibit C, the Debtors also filed the Declaration of James M. Hensler in Support of the Debtors' Motion for Interim and Final Orders (i) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364, (ii) Authorizing the Postpetition Use of Cash Collateral, (iii) Granting Adequate Protection to the Prepetition Secured Parties, (iv) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(B), and (v) Granting Related Relief (the "Hensler DIP Decl.").

01:18230022.4

**Relevant Background**

8.      On or about June 30, 2015, the Debtors (other than Zochem Inc.), as borrowers, and Macquarie, as lenders, entered into that certain credit agreement (the "<u>Macquarie Credit Agreement</u>"), that provided for an $80 million secured revolving credit facility (the "<u>Macquarie Credit Facility</u>"). The obligations (the "<u>Macquarie Obligations</u>") under the Macquarie Credit Facility are secured by first priority liens (subject to certain permitted liens) on substantially all of the Debtors' assets, other than the assets of Zochem Inc. ("<u>Zochem</u>") and second priority on certain real property, fixtures and equipment of Horsehead and certain of its subsidiaries.  As of the Petition Date, the outstanding principal amount under the Macquarie Credit Facility, together with unpaid interest, fees and expenses, is in excess of $27 million.

9.      In addition, among other amounts owed, the Debtors also owe Macquarie an additional amount of approximately $5.4 million which includes, among other things, $4,056,696 pursuant to the Macquarie Credit Facility's minimum utilization fee; $433,260 pursuant to Section 5(m) of the Forbearance Agreement, dated January 15, 2016, agreed to and executed by Debtors and Macquarie; and a $1 million Forbearance Fee pursuant to the Forbearance Agreement (interest and certain fees will continue to accrue and/or increase).  In total, the Debtors currently owe Macquarie approximately $32.6 million.

10.     Contemporaneously with the establishment of, and in connection with the Macquarie Credit Facility, the collateral agent for the Senior Secured Notes also entered into that certain intercreditor agreement, dated June 30, 2015 (the "<u>Intercreditor Agreement</u>"), which, among other things, provided for the relative priority between Macquarie and the Senior Secured Notes with respect to certain shared collateral.  Specifically, the Intercreditor Agreement provides that the liens granted under the Macquarie Credit Facility: (a) are senior to any liens

granted by the Debtors to secure the Senior Secured Notes with respect to (i) all INMETCO assets, (ii) and certain personal property of Horsehead and its subsidiaries, including accounts receivables, inventory, cash and deposit accounts and (b) are junior to (i) any liens granted to secure the Senior Secured Notes with respect to real property, fixtures, and equipment of Horsehead and certain of its subsidiaries, and (ii) with respect to liens granted on Horsehead Holdings' assets.

11. In addition, pursuant to Section 6.3(a) of the Intercreditor Agreement, Macquarie and U.S. Bank National Association, as Collateral Agent for the Secured Noteholders[4] agreed that the Secured Noteholders could not "directly or indirectly, contest" any request for adequate protection by Macquarie during any proceeding involving Debtors, or any objection filed by Macquarie "claiming a lack of adequate protection." Specifically, Section 6.3(a) states, in pertinent part:

> (a) The Collateral Agent, on behalf of itself, the Trustee and the other Indenture Holders, agrees that none of them shall, directly or indirectly, contest (or support any other Person contesting): (a) any request by the Facilities Collateral Agent or the Facilities Secured Parties[5] for adequate protection; or (b) any objection by the Facilities Collateral Agent or the Facilities Secured Parties to any motion, relief, action or proceeding based on the Facilities Collateral Agent of the Facilities Secured Party claiming a lack of adequate protection, in each case, in respect of the Facilities Priority Shared Collateral.

**Objection**

A. **The DIP Facility and the Proposed Use of Cash Collateral Do Not Adequately Protect Macquarie's Interests**

12. Section 363(c)(2) of the Bankruptcy Code expressly prohibits a debtor in possession from using cash collateral unless the secured party with an interest in the cash

---

[4] The DIP Term Sheet makes clear that the DIP Lenders are "[c]ertain holders of the Horsehead Holding Corp. 10.5% Senior Secured Notes due 2017…" See DIP Term Sheet, p. 1.

[5] "Facilities Secured Parties" is defined in the Intercreditor Agreement to include Macquarie.

collateral consents or the court, after notice and a hearing, authorizes its use.  See 11 U.S.C. §363(c)(2).  If the secured creditor does not consent to the use of its collateral, then the debtor bears the burden of proof to establish the existence of adequate protection, which should be premised on facts or projections with a firm evidentiary basis. Resolution Trust Corp. v. Swedeland Dev. Group (In re Swedeland Dev. Grp. Inc.), 16 F.3d 552, 564 (3d Cir. 1994); In re Mosello, 195 B.R. 277, 292 (Bankr. S.D.N.Y. 1996).

13.    Additionally, section 364(d)(1) of the Bankruptcy Code provides that a court may authorize a debtor to incur postpetition debt on a senior or "priming" basis only if (a) the debtor is unable to obtain credit otherwise and (b) there is "adequate protection" of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.  See 11 U.S.C. § 364(d)(1).

14.    Adequate protection is not defined in the Bankruptcy Code.  However, pursuant to section 361 of the Bankruptcy Code, adequate protection may include:  (a) periodic cash payments; (b) additional or replacement liens; or (c) the "indubitable equivalent" of a secured creditor's interests in such property.  See 11 U.S.C. § 361; In re Swedeland, 16 F.3d at 564. What constitutes adequate protection is decided on a case-by-case basis and may take various forms, including, in addition to the above, payment of adequate protection fees, payment of interest and granting of administrative claims. In re Energy Future Holding Corp., 527 B.R. 157, 165 (D.Del. 2015) ("Creditors with depreciating collateral values may petition the court for cash payments, replacement liens, or administrative expenses to provide the necessary adequate protection."); In re Beker Indus. Corp., 58 B.R.725, 736 (Bankr. S.D.N.Y. 1986) (the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the

secured creditor from the diminution in the value of its collateral during the reorganization process") (citation omitted).

15. Macquarie's need for protection from the threatened diminution of the value of its collateral is particularly acute given the deeply distressed condition of the Debtors here. As the Debtors' Chairman, Mr. Hensler, acknowledges in his "first day" declaration, "the Debtors' financial position has been negatively impacted by many of the same macroeconomic effects presently being felt by the metals-processing sector: historically low commodity prices coupled with weaker near-term global demand." See Hensler First Day Decl., ¶ 6.

16. "[T]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy." In re Swedeland, 16 F.3d at 564 (internal quotation marks and citation omitted). "In other words, the proposal should provide the prepetition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing." Id.

17. Here, the automatic stay prevents Macquarie from enforcing its rights under the Macquarie Credit Agreement, which include, but are not limited to, foreclosing on its collateral. As a result of the Debtors' use of Macquarie's collateral and their prevention of Macquarie's exercise of its rights, Macquarie is entitled to basic protections typically afforded senior secured creditors, such as the immediate payment of its reasonable interest, fees and expenses in connection with the Macquarie Credit Facility. By the Debtors' own admission, Macquarie's first priority collateral has an aggregate value in excess of $47 million. Macquarie is therefore significantly oversecured. See Hensler DIP Decl., ¶ 9. As such, the Bankruptcy Code also authorizes the payment of interest, fees and expenses which are authorized under the Macquarie Credit Agreement. See 11 U.S.C. § 506(b). The failure to provide for the payment of such

interest, fees and expenses as part of any adequate protection package for Macquarie is even more egregious when coupled with the fact that junior creditors are not only being paid their fees and expenses, but are also receiving enhanced protections such as a section 506(c) waiver and releases. In addition, in order to monitor the proposed adequate protection, Macquarie would also need the same reporting that the DIP Lenders are to receive.

18. In the context of the use of cash collateral, adequate protection cannot be illusory and must be of the "most indubitable equivalence." In re Good, 235 B.R. 584, 590 (Bankr. E.D. Tex. 1990). Here, the DIP Facility's mandatory prepayment provision provides that the net cash proceeds of a sale or other disposition of any Collateral be used to pay the Loans under the DIP Facility. See Interim DIP Order, § 2.06(b). Thus, even though the Debtors claim that Macquarie is not being primed, in fact it is primed because the proceeds sold from collateral subject to its pre-petition liens will be used to pay down the DIP Facility. Similarly, granting Macquarie replacement liens in collateral which may be sold or disposed of with the proceeds thereof satisfying the obligations under the DIP Facility can hardly be considered adequate protection. In short, the "adequate protection" in the form of replacement liens in collateral that may be sold or otherwise disposed of, the proceeds of which must be used to pay obligations under the DIP Facility prior to Macquarie's senior secured claim, is not only illusory, but is a non-consensual and impermissible priming of Macquarie's liens.

19. In order to provide sufficient adequate protection to Macquarie as required under the Bankruptcy Code, Macquarie submits that solely for the purposes of the Interim Order and without prejudice to its rights to request adequate protection, at minimum, any order approving the use of its cash collateral should include additional provisions as set forth in Exhibit A, attached hereto.

20. Finally, the Intercreditor Agreement makes clear that the Secured Noteholders cannot object to or contest Macquarie's positions here, nor claim that Macquarie is not entitled to the adequate protection it seeks. Section 6.3 (a) of the Intercreditor Agreement sets forth unequivocally that the Secured Noteholders cannot "directly or indirectly contest … any objection by …[Macquarie] to any motion, relief, action or proceeding based on . . . [Macquarie] claiming a lack of adequate protection, in each case, in respect of the Facilities Priority Shared Collateral." (Intercreditor Agreement, Section 6.3(a)). Accordingly, any attempt by the Secured Noteholders to oppose Macquarie's objection here would clearly constitute a breach of the Intercreditor Agreement.

## Reservation of Rights

21. Macquarie expressly reserves the right to amend or supplement this Objection, to file additional objections, and to introduce evidence supporting this Objection and any other objections at any hearing on the DIP Motion. Macquarie further reserves the right to request adequate protection and object to any final order with respect to the DIP Motion on any and all bases.

WHEREFORE, Macquarie respectfully requests that the Court deny entry of either the Interim Order with respect to the DIP Motion unless the Debtors provide adequate protection as set forth herein, and grant such other relief that the Court may deem just and proper.

Dated: February 3, 2016  YOUNG CONAWAY STARGATT & TAYLOR, LLP
Wilmington, Delaware

*/s/ Donald J. Bowman, Jr.*
Matthew B. Lunn, (No. 4119)
Donald J. Bowman, Jr., (No. 4383)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-AND

Mark A. Speiser
Curtis C. Mechling
Claude Szyfer
Sherry J. Millman
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

Counsel to Macquarie Bank Limited

## Exhibit A

1.        The Debtors would stipulate that the secured claims of the Macquarie entities as of February 2, 2016 total $32,657,653 (the "<u>Macquarie Secured Claim</u>") reflecting: outstanding principal of $26,887,575, accumulated interest of $234,052, and the unpaid offtake amount of $433,260 as well as the following fees:  accumulated unused fee of $46,070, forbearance fee of $1,000,000 and minimum utilization fee of $4,056,696.   The Macquarie Secured Claim will be allowed in full in this amount, subject to any challenges by third parties.  (Note that interest, the forbearance fee and the minimum utilization fee will increase with the passage of time).

For avoidance of confusion, the Debtors' stipulations as to Macquarie's claims and liens and as to the collateral value will not be binding upon any other party.

2.        The Debtors would stipulate to the allowance and validity of Macquarie's claims, the validity and perfection of Macquarie's liens, and that there is no setoff, defense, counterclaim, etc.  In addition, Macquarie would be afforded the same releases and protections afforded the bondholders and other parties as set forth in the proposed DIP order.

3.        The DIP order would acknowledge Macquarie's right  to seek additional adequate protection (same language as in Paragraph 13 (c) of the draft DIP order) and would  include Macquarie in the exception to the application of 506(c) and 552(b) and relieve Macquarie of the obligation to file a proof of claim. .

4.        The Debtors would stipulate to a value for Macquarie's first lien collateral of $47 million as per the CEO certification (without prejudice to Macquarie's right to assert a higher collateral value amount).

5.        The Macquarie entities would receive complete releases after the expiration of the same challenge period as applies to the bondholders and other parties as set forth in the draft DIP order (75/60 days as per the proposed DIP order).  Any extension of the challenge period as to Macquarie requires Macquarie's consent.

6.        The Debtors are to be authorized but not directed to repay the Macquarie obligations in full out of the DIP facility and cash collateral.

7.        The DIP order would preclude the use of cash collateral for any Challenge to Macquarie.

8.        Payment of Macquarie's post-petition interest on a current basis at the default rate set forth in the loan agreement.

9.        As to the Macquarie expense reimbursement provision, the payment in full of accrued amounts (through the Petition Date) within ten days of the Petition Date plus timely payment in full of all amounts thereafter through the date of the Final DIP order (inclusive of the Tiger Fee of $25,000),without a cap,  and elimination (without the need for request by Macquarie) of the $75,000 monthly cap in the event of a "Triggering Event", which will be defined to mean any of the following:  (i) any failure by the Debtors to comply with their  obligations to Macquarie under the DIP order, (ii) any notice that an event of default has occurred under the DIP agreement, (iii) there is a Challenge to Macquarie or any of its affiliates, representatives, attorneys, or advisors or an investigation by the Committee or any other party in interest, or (iv) any plan of reorganization or liquidation or sale of assets is proposed by any party in interest which provides for or would result in the treatment of Macquarie's obligations other than the payment in cash in full on the effective date of such plan or sale of assets, as the case may be.

10.     Any fees deferred pursuant to Par. 9 above shall bear interest at the default rate under the Credit Agreement and shall be payable no later than the earlier of the consummation of a sale of substantially all of the Debtors' assets or the effective date of a confirmed plan or any earlier repayment of the principal of Macquarie's claim.

11.     The DIP order and DIP credit agreement would provide that, until the Macquarie Secured Claim is paid in full in cash, (i) any proceeds from sales outside the ordinary course of business, or casualty or condemnation, of assets (including fixed assets) on which Macquarie had a pre-petition first priority lien must be used immediately to pay down the Macquarie Secured Claim, and (ii) any proceeds from sales outside the ordinary course of business, or casualty or condemnation, of other assets (including fixed assets) cannot be used to pay down the DIP without Macquarie's consent unless the Debtors establish to Macquarie's reasonable satisfaction that, following such DIP paydown, the remaining collateral subject to Macquarie's first priority security interest has sufficient value to fully cover the Macquarie Secured Claim plus provide a reasonable cushion.  The DIP credit agreement would expressly permit the paydown to Macquarie in these situations.

12.     The DIP order would clearly state that the DIP liens are junior to Macquarie's pre-petition liens (including its second priority liens on the fixed assets of Horsehead).

13.     The DIP order and DIP credit agreement would require that Macquarie receive written notice from the DIP agent of the occurrence of any event of default under the DIP credit agreement at least five business days before the DIP lenders or agent could exercise any remedies with respect to the collateral.

14.     Macquarie will be entitled to receive the same reporting and will have the same right to request information from the Debtors as the DIP lenders.