## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HORSEHEAD HOLDING CORP., et al.,[1] | ) | Case No. 16-10287 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF LAZARD FRÈRES &
CO. LLC AND LAZARD MIDDLE MARKET LLC AS INVESTMENT BANKER TO
THE DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE NUNC PRO TUNC
TO THE PETITION DATE, (II) APPROVING THE TERMS OF THE Lazard
AGREEMENT, (III) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS
PURSUANT TO LOCAL RULE 2016-2(H), AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this application (this "Application") for entry of an order, substantially in the form attached

hereto as **Exhibit A**: (I) authorizing the Debtors to employ and retain Lazard Frères & Co. LLC

("Lazard Frères") and Lazard Middle Market LLC ("LMM," and, together with Lazard Frères,

"Lazard"), as their investment banker, nunc pro tunc to the Petition Date (as defined below),

pursuant to (i) that certain engagement letter dated December 3, 2015, annexed as **Exhibit 1** to

**Exhibit A** (the "Engagement Letter"), by and between LMM and Horsehead Holding Corp., and

each of its subsidiaries, and (ii) that certain letter regarding indemnification and related matters,

dated as of December 3, 2015, by and between LMM and Horsehead Holding Corp., and each of

its subsidiaries, annexed as **Exhibit 2** to **Exhibit A** (the "Indemnification Letter," and together

with the Engagement Letter, the "Lazard Agreement"); (II) approving the terms of the Lazard

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Horsehead Holding Corp. (7377); Horsehead Corporation (7346); Horsehead Metal Products,
LLC (6504); The International Metals Reclamation Company, LLC (8892); and Zochem Inc. (4475).  The
Debtors' principal offices are located at 4955 Steubenville Pike, Suite 405, Pittsburgh, Pennsylvania 15205.

Agreement; (III) waiving certain time-keeping requirements pursuant to Local Rule 2016-2(h); and (IV) granting related relief.   In support of this Application, the Debtors submit the Declaration of Andrew Torgove, a Managing Director at LMM (the "Torgove Declaration"), which is attached hereto as **Exhibit B**.   In further support of this Application, the Debtors respectfully state as follows:

### Jurisdiction

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.   This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).   The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2014-1 and 2016-2(h).

### Relief Requested

4.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**:  (a) authorizing the Debtors to employ and retain Lazard as their investment banker

2

nunc pro tunc to the Petition Date; (b) approving the terms of the Lazard Agreement; (c) waiving

certain time-keeping requirements pursuant to Local Rule 2016-2(h); and (d) granting related

relief.

### Background

5.      On February 2, 2016 (the "Petition Date"), each of the Debtors filed a petition

with this Court under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their

business and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for

procedural purposes only and are being jointly administered pursuant to Bankruptcy

Rule 1015(b) and Local Rule 1015-1.  No party has requested the appointment of a trustee or

examiner in these chapter 11 cases.  On February 16, 2016, the U.S. Trustee appointed an official

committee of unsecured creditors.

### Retention of Lazard

6.      The Debtors require a qualified and experienced investment banker with the

resources, capabilities, and experience of Lazard to assist them in pursuing the transaction(s) that

are crucial to the success of the Debtors' cases.  An investment banker, such as Lazard, fulfills a

critical service that complements the services provided by the Debtors' other professionals.

7.      LMM is a subsidiary of Lazard Frères, which is the primary U.S. operating

subsidiary of a preeminent international financial advisory and asset management firm.

Lazard Frères' principal office is located at 30 Rockefeller Plaza, New York, New York 10020.

Together with its predecessors and affiliates, Lazard has been advising clients around the

world for over 150 years.

8.      Lazard has dedicated professionals who provide restructuring services to its

clients.  Lazard's professionals have extensive experience in matters working with financially

3

troubled companies in complex financial restructurings and have a reputation for creativity in complex situations. Lazard and/or its principals have been involved as advisor to debtor, creditor and equity constituencies and government agencies in many reorganization cases. Since 1990, Lazard's professionals have been involved in over 250 restructurings, representing over $1 trillion in debtor assets.

9. Notably, Lazard has been retained as an investment banker and financial advisor in numerous large and complex chapter 11 cases, including, among others, In re Sabine Oil & Gas Corp., No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 10, 2015); In re The Standard Register Co., No. 15-10541 (BLS) (Bankr. D. Del. Apr. 13, 2015); In re AWI Delaware, Inc., No. 14-12092 (KJC) (Bankr. D. Del. Sep. 17, 2014); In re Longview Power, LLC, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013); In re Maxcom Telecomm., S.A.B. de C.V., No. 13-11839 (PJW) (Bankr. D. Del. Aug. 15, 2013); In re Cengage Learning, Inc., No. 13-44106 (ESS) (Bankr. E.D.N.Y. July 24, 2013); In re A123 Sys., Inc., No. 12-12859 (KJC) (Bankr. D. Del. Nov. 9, 2012); In re Eastman Kodak Co., No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 28, 2012); In re NewPage Corp., No. 11-12804 (KG) (Bankr. D. Del. Nov. 3, 2011); In re Great Atl. & Pac. Tea Co., No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 12, 2011).

10. The Debtors have selected Lazard as their investment banker based upon, among other things, (a) the Debtors' need to retain an investment banking firm to provide advice with respect to the Debtors' restructuring activities, (b) Lazard's experience with the Debtors' assets and operations, and (c) Lazard's extensive experience and excellent reputation in providing investment banking and financial advisory services in complex chapter 11 cases.

11. The resources, capabilities, and experience of Lazard in advising debtors are crucial to a debtor during its chapter 11 case. An experienced investment banker such as Lazard

4

fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals. Lazard will concentrate its efforts on the restructuring, negotiating with the Debtors' creditor constituencies, and assisting the Debtors to consummate a sale of their assets or securing postpetition financing to fund a restructuring plan. For these reasons, the Debtors require the services of a capable and experienced investment banking firm such as Lazard.

### Services to be Provided

12.    Per the terms of the Engagement Letter, Lazard will advise and assist the Debtors in connection with the following tasks:[2]

- reviewing and analyzing the Debtors' business, operations, and financial projections;

- evaluating the Debtors' potential debt capacity in light of their projected cash flows;

- assisting in the determination of a capital structure for the Debtors;

- assisting in the determination of a range of values for the Debtors on a going concern basis;

- advising the Debtors on tactics and strategies for negotiating with their Stakeholders;

- rendering financial advice to the Debtors and participating in meetings or negotiations with the Debtors' Stakeholders and/or rating agencies or other appropriate parties in connection with any Amendment or Restructuring;

- advising the Debtors on the timing, nature, and terms of new securities, other consideration, or other inducements to be offered pursuant to any Restructuring;

- advising and assisting the Debtors in evaluating any potential Financing transaction by the Debtors, including contacting potential sources of capital and assisting the Debtors in implementing such Financing;

---

[2]    The summary provided herein is for illustrative purposes only and is subject to the Engagement Letter in all respects. In the event of any inconsistency between the summary of services as set forth herein and the Engagement Letter, the Engagement Letter will control. Capitalized terms not otherwise defined in such summaries shall have the meanings ascribed to them in the Engagement Letter.

KE 39149628

- assisting the Debtors in preparing documentation within Lazard's area of expertise that is required in connection with any Financing, Amendment, Sale, or Restructuring;

- assisting the Debtors in identifying and evaluating candidates for any potential Sale Transaction, advising the Debtors in connection with negotiations and aiding in the consummation of any Sale Transaction;

- attending meetings of the Debtors' Board of Directors with respect to matters on which Lazard has been engaged to advise under the Engagement Letter;

- providing testimony, as necessary, with respect to matters on which Lazard has been engaged to advise under the Engagement Letter in any proceeding before the Court; and

- providing the Debtors with other financial restructuring advice.

13.     The Debtors believe that Lazard is well qualified and able to provide the foregoing services to the Debtors. Lazard has indicated a willingness to act on behalf of the Debtors, on the terms described herein.

## Professional Compensation

14.     Lazard intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court (to the extent compliance is not waived), and consistent with the proposed compensation set forth in the Engagement Letter (the "Fee Structure"). Lazard's decision to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and to be compensated for its services and reimbursed for the expenses it incurs in accordance with its customary billing practices.

15.     Investment bankers such as Lazard do not typically charge for their services on an hourly basis. Instead, they customarily charge a monthly advisory fee plus an additional fee that

is contingent upon the occurrence of a specified type of transaction. The Engagement Letter follows this custom in the investment banking industry, and sets forth the monthly and transaction-based fees that are to be payable to Lazard.

16.     The compensation arrangements contained in the Lazard Agreement are highly beneficial to the Debtors' estates as they provide certainty and proper inducement for Lazard to act expeditiously and prudently with respect to the matters for which it will be employed. Accordingly, because the Debtors are seeking to retain Lazard under section 328(a) of the Bankruptcy Code, the Debtors believe that Lazard's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code and does not constitute a "bonus" or fee enhancement under applicable law.

17.     In summary, the Fee Structure provides that the Debtors shall pay Lazard the following fees:[3]

- **Monthly Fee**. A monthly fee of $125,000 (the "Monthly Fee"), payable on execution of the Engagement Letter and on the 1st day of each month thereafter until the earlier of the completion of the Restructuring, Financing, Sale, or Amendment or the termination of Lazard's engagement pursuant to Section 10 of the Engagement Letter. Fifty percent (50%) of Monthly Fees paid in respect of any months following the third month of Lazard's engagement shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee payable; provided, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Court, if applicable.

- **Financing Fee**. A fee, payable upon consummation of a Financing (the "Financing Fee") calculated by multiplying the applicable fee percentage below by the total gross proceeds raised or committed (including, for the avoidance of doubt, amounts committed but undrawn) in each Financing:

---

[3]   The summary provided herein is for illustrative purposes only and is subject to the Engagement Letter in all respects. In the event of any inconsistency between the Fee Structure as set forth herein and the Engagement Letter, the Engagement Letter will control. Capitalized terms not otherwise defined in such summaries shall have the meanings ascribed to them in the Engagement Letter.

KE 39149628

| Funds Raised | Fee % |
|---|---|
| First Lien Debt | 1.50% |
| Second Lien Debt | 2.50% |
| Unsecured Debt | 3.50% |
| Equity (other than Stifel Developed Equity Sales[4]) | 6.00% |

In the case of any Stifel Developed Equity Sale, if such sale is not made in conjunction with a Restructuring, Lazard will be paid a Financing Fee equal to 2.00% of the gross proceeds raised or committed (any Stifel Developed Equity Sales that are made in conjunction with a Restructuring shall be subject to the fee set forth in the percentages set forth immediately above this paragraph.

Fifty percent (50%) of any Financing Fee shall be credited (without duplication) against any subsequent Restructuring Fee or Sale Transaction Fee payable to Lazard.

- **Restructuring Fee/Sale Transaction Fee**.  A fee equal to $3,500,000 (the "Restructuring Fee") upon the consummation of a Restructuring.  If, whether in connection with the consummation of a Restructuring or otherwise, the Debtors consummate a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Debtors, and the Debtors have requested Lazard's assistance in negotiating and implementing the Sale Transaction, Lazard shall be paid a fee (the "Sale Transaction Fee") equal to $3,500,000 plus 5.0% of the Aggregate Consideration over $500,000,000. For the avoidance of any doubt, the Debtors will pay either the Restructuring Fee or the Sale Transaction Fee, as applicable, but not both.[5]

18.    In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Debtors shall promptly reimburse Lazard for all reasonable expenses incurred by Lazard (including travel and lodging, data processing and communications charges, courier services, and other expenditures) and the reasonable fees and expenses of outside counsel, if any, retained by Lazard to negotiate or enforce the Engagement Letter or for services to Lazard necessary for Lazard to perform its obligations under the Engagement Letter (provided

---

[4]  "Stifel Developed Equity Sale" means any issuance of convertible preferred stock or similar other convertible equity securities (including convertible notes, attached or detachable grants of warrants, options) for cash to purchasers that are identified by the Debtors to both LMM and Stifel, Nicholas & Co. as being potential investors that Stifel, Nicholas & Co. should approach and with which Stifel, Nicholas & Co. should negotiate a purchase of such securities.

[5]  The Engagement Letter sets forth certain additional fees payable to Lazard, which Lazard does not expect will be earned in connection with these cases and which have been omitted from the foregoing summary.

8

Lazard provides reasonable prior notice to the Debtors of Lazard's intention to retain counsel), subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules (to the extent not waived).  Lazard will maintain records in support of any expenses incurred in connection with the rendering of its services in these cases.

19.    As it is not the general practice of investment banking firms, including Lazard, to keep detailed time records, and because Lazard's compensation will be calculated and paid based on certain transaction fees (in addition to Monthly Fees), Lazard requests that it not be required to file time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-2, the United States Trustee Fee Guidelines, and any otherwise applicable orders or procedures of the Court. Notwithstanding that Lazard does not charge for its services on an hourly basis, Lazard will nonetheless maintain records (in summary format) of its services rendered for the Debtors in one-half hour increments, including reasonably detailed descriptions of those services and the individuals who provided those services, and will present such records to the Court in its interim and final fee applications.

20.    The Debtors believe the Fee Structure is consistent with and typical of compensation arrangements entered into by Lazard and other comparable firms in connection with the rendering of similar services under similar circumstances.  Lazard's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Lazard's engagement, were all important factors in determining the Fee Structure.  The Debtors believe that the ultimate benefit of Lazard's services cannot be measured by reference to the number of hours to be expended by Lazard's professionals in the performance of such services.    Indeed, the Debtors and Lazard have agreed upon the

9

Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Lazard and its professionals in connection with these cases and in light of the fact that: (a) such commitment may foreclose other opportunities for Lazard; and (b) the actual time and commitment required of Lazard and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for Lazard.

21.     In light of the foregoing and given the numerous issues that Lazard may be required to address in the performance of its services hereunder, Lazard's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Lazard's services for engagements of this nature both in an out-of-court and chapter 11 context, the Debtors believe that the Fee Structure is fair, reasonable, and market-based under the standard set forth in section 328(a) of the Bankruptcy Code.

**Indemnification**

22.     The Debtors have agreed to indemnify, to make certain contributions to, and to reimburse Lazard and the other Indemnified Persons (as defined in the Indemnification Letter) in accordance with the provisions set forth in the Indemnification Letter. The Indemnification Letter provides, among other things, that the Debtors will indemnify Lazard and other Indemnified Persons except to the extent that any loss, claim, damage, liability, or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted from such Indemnified Person's bad faith or gross negligence.

23.     The indemnification, contribution, and reimbursement provisions reflected in the Indemnification Letter are customary and reasonable terms of consideration for investment bankers such as Lazard for proceedings both out of court and in chapter 11. The terms of the

10

Indemnification Letter were fully negotiated between the Debtors and Lazard at arm's-length and the Debtors respectfully submit that the Indemnification Letter is reasonable and in the best interests of the Debtors, their estates, and stakeholders. Accordingly, the Debtors request that the Court approve the Indemnification Letter, subject to customary modifications set forth in the Debtors' proposed order.

## No Duplication of Services

24.    The Debtors intend that Lazard's services will complement, and not duplicate, the services to be rendered by any other professional retained by the Debtors in these chapter 11 cases. The Engagement Letter reflects Lazard's understanding that the Debtors may retain other professionals during the term of the engagement, and the Debtors believe that at their request Lazard will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## Lazard's Disinterestedness

25.    Lazard has informed the Debtors that, except as set forth in the Torgove Declaration, Lazard: (a) has no connection with the Debtors, their creditors, equity security holders or other parties in interest or their respective attorneys or accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee in any matter related to the Debtors and their estates; (b) does not hold any interest adverse to the Debtors' estates; and (c) believes that it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code. If any new material facts or relationships are discovered or arise, Lazard will promptly inform the Court as required by Bankruptcy Rule 2014(a).

26.    During the 90 day period prior to the commencement of these cases, Lazard was paid in the ordinary course certain Monthly Fees and expense reimbursement. Specifically,

11

shortly after the Lazard Agreement was executed on or about December 10, 2015, Lazard was paid its December and January Monthly Fees for a total of $250,000.00 on January 7, 2016. Lazard was also prepaid its February Monthly Fee and certain expense reimbursements in the amount of $137,007.73 on January 28, 2016. As of the Petition Date, no other amounts were due and payable to Lazard under the Lazard Agreement. Accordingly, Lazard is not a prepetition creditor of the Debtors.

27.     Accordingly, to the best of the Debtors' knowledge, information, and belief that is based entirely in reliance on the representations made to the Debtors by Lazard, which are reflected in the Torgove Declaration, none of Lazard's past or current engagements would or do appear to create an interest materially adverse to the interests of the Debtors, creditors or equity security holders in these chapter 11 cases. As such, the Debtors believe that Lazard is disinterested and holds no materially adverse interest as to the matters upon which they are to be retained in these chapter 11 cases.

## **Basis for Relief**

28.     Section 327(a) of the Bankruptcy Code authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). As discussed above, Lazard satisfies the disinterestedness standard of section 327(a).

29.     In addition, the Debtors seek approval of the Lazard Agreement, including the Fee Structure set forth therein, pursuant to section 328(a) of the Bankruptcy Code. Section 328(a) provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

KE 39149628

30.    Section 328 permits the compensation of professionals, including investment

bankers and financial advisors, on more flexible terms that reflect the nature of their services and

market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in

Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.),

123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for
> bankruptcy estates where their compensation would be subject to the uncertainties
> of what a judge thought the work was worth after it had been done.  That
> uncertainty continues under the present § 330 of the Bankruptcy Code, which
> provides that the court award to professional consultants "reasonable
> compensation" based on relevant factors of time and comparable costs, etc.
> Under present § 328 the professional may avoid that uncertainty by obtaining
> court approval of compensation agreed to with the trustee (or debtor or
> committee).

Id. at 862 (internal citations omitted).

31.    As set forth above, notwithstanding approval of the Engagement Letter under

section 328(a) of the Bankruptcy Code, Lazard intends to apply for compensation for

professional services rendered and reimbursement of expenses incurred in connection with these

cases, subject to the Court's approval and in compliance with the applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures

and orders of the Court (to the extent compliance is not waived) and consistent with the Fee

Structure set forth in the Engagement Letter.

32.    The Debtors believe that the Fee Structure appropriately reflects the nature and

scope of services to be provided by Lazard in these chapter 11 cases, Lazard's substantial

experience with respect to investment banking services, and the fee structures typically utilized

by Lazard and other leading investment banks that do not bill their client on an hourly basis.  In

agreeing to seek Lazard's retention under section 328(a) of the Bankruptcy Code, the Debtors

acknowledge that:  (a) they believe that Lazard's general restructuring experience and expertise,

KE 39149628

its knowledge of the capital markets, and its merger and acquisition capabilities will inure to the benefit of the Debtors in pursuing any Restructuring (as defined in the Engagement Letter); (b) that the value to the Debtors of Lazard's services under the Lazard Agreement derives in substantial part from that expertise and experience; (c) that, accordingly, the Fee Structure is reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided under the Lazard Agreement, and (d) that any deferred fees earned by Lazard pursuant to the Engagement Letter should not be considered to be "bonuses" or fee enhancements under applicable law.

33.    Indeed, similar fixed and contingency fee arrangements in other large chapter 11 cases have been routinely approved and implemented by courts in this circuit and elsewhere. See, e.g., In re Sabine Oil & Gas Corp., No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 10, 2015) (approving a flexible fee structure and engagement letter under section 328 on the grounds that both were reasonable); In re The Standard Register Co., No. 15-10541 (BLS) (Bankr. D. Del. Apr. 13, 2015); In re AWI Delaware, Inc., No. 14-12092 (KJC) (Bankr. D. Del. Sep. 17, 2014); In re Longview Power, LLC, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013) (same); In re Cengage Learning, Inc., No. 13-44106 (ESS) (Bankr. E.D.N.Y. July 24, 2013) (same); In re Exide Techs., No. 13-11482 (KJC) (Bankr. D. Del. July 10, 2013); In re A123 Sys., Inc., No. 12-12859 (KJC) (Bankr. D. Del. Nov. 9, 2012).[6]

34.    Moreover, the Debtors and Lazard believe that the indemnification provisions set forth in the Indemnification Letter are customary and reasonable for investment banking engagements, both out of court and in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions in this District.  See, e.g., In re Sabine Oil & Gas

---

[6]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application.  Copies of these orders are available upon request of the Debtors' proposed counsel.

Corp., No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 10, 2015); In re The Standard Register Co., No. 15-10541 (BLS) (Bankr. D. Del. Apr. 13, 2015); In re AWI Delaware, Inc., No. 14-12092 (KJC) (Bankr. D. Del. Sep. 17, 2014); In re Longview Power, LLC, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013); In re Cengage Learning, Inc., No. 13-44106 (ESS) (Bankr. E.D.N.Y. July 24, 2013); In re Exide Techs., No. 13-11482 (KJC) (Bankr. D. Del. July 10, 2013); In re A123 Sys., Inc., No. 12-12859 (KJC) (Bankr. D. Del. Nov. 9, 2012); In re NewPage Corp., No. 11-12804 (KG) (Bankr. D. Del Nov. 3, 2011).

35.     The Debtors also believe that employment of Lazard nunc pro tunc to the Petition Date is warranted by the circumstances presented by these cases.   The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring nunc pro tunc retention.   See In re Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986).   The complexity, compressed timing, and intense activity relating to the preparation and filing of these chapter 11 cases necessitated that the Debtors and Lazard, as well as the Debtors' other professionals, focus their immediate attention on time-sensitive matters, and promptly devote substantial resources to the affairs of the Debtors to comply with the pending submission and approval of this Application.

36.     In light of the foregoing, and given the numerous issues that Lazard may be required to address in the performance of its services under the Engagement Letter, Lazard's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Lazard's services for engagement of this nature, the Debtors believe that the terms and conditions of the Lazard Agreement are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

## **Notice**

37.     The Debtors will provide notice of this Application to the following parties or

their respective counsel, if known:  (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the official committee of unsecured creditors; (c) the Office of the United States Attorney for the District of Delaware; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) counsel to Macquarie Bank Limited; (g) the indenture trustee under the Debtors' 10.50% senior secured notes; (h) the indenture trustee under the Debtors' 9.00% senior unsecured notes; (i) the indenture trustee under the Debtors' 3.80% convertible senior notes; (j) Banco Bilbao Vizcaya Argentaria, S.A.; (k) counsel to PNC Bank, National Association; (l) counsel for the lenders under the Debtors' debtor-in-possession financing facility (such facility the "DIP Facility") and the ad hoc group of holders of the Debtors' secured notes; (m) the agent to the DIP Facility; (n) Richter Advisory Group Inc. in its capacity as information officer in the Debtors' foreign recognition proceedings; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

38.    No prior application or motion for the relief requested herein has been made to this or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

KE 39149628

WHEREFORE, for the reasons set forth herein and in the Torgove Declaration, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**: (I) authorizing the Debtors to employ and retain Lazard as their investment banker nunc pro tunc to the Petition Date; (II) approving the terms of the Lazard Agreement; (III) waiving certain time-keeping requirements pursuant to Local Rule 2016-2(h); and (IV) granting related relief.

Dated:  February 22, 2016
        Wilmington, Delaware

                                    Timothy D. Boates
                                    Chief Restructuring Officer
                                    Horsehead Holding Corp. et al.

KE 39149628